IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KRISTY SPENCER,<br><br>                Plaintiff,<br><br>v.<br><br>SNOWBIRD RESORT, LLC d.b.a.<br>SNOWBIRD SKI AND SUMMER<br>RESORT d.b.a. THE FORKLIFT<br>RESTAURANT,<br><br>                Defendant. | MEMORANDUM DECISION AND<br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:15-CV-672 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons discussed below, the Court will grant the Motion.

I. BACKGROUND

Plaintiff was first hired by Defendant in 2008. Plaintiff was terminated within 90 days for tardiness and theft.[1] Plaintiff began working for Defendant again beginning in 2011. During the ski season, Plaintiff worked in the Tram and Lifts Department. In late 2012, Plaintiff suffered a back injury. On December 10, 2012, Plaintiff's doctor released her to return to work on light duty, with restrictions on lifting and shoveling.

On June 2, 2013, Plaintiff informed her supervisor that she had an outpatient medical procedure, but was cleared to return to work under the same restrictions. That is, no heavy

---

[1] Plaintiff provides context for the actions that led to her termination, but does not dispute that she was terminated.

lifting. Around this same time, Plaintiff was hired to work at the Forklift Restaurant at Snowbird during the summer months. Plaintiff was hired as either a wait person or a server.[2]

On August 25 and 26, 2013, Plaintiff was scheduled to work as a busser. When Plaintiff started her shift on August 25, 2013, she clocked in as a server. When informed that she was working as a busser, she clocked out as a server. Plaintiff then clocked back in as a Festival Server. Plaintiff asserts that this was the only other option available to her on the computer system. Plaintiff did not inform her manager that she could not clock in as a busser and there is evidence that it would have been easy for this situation to be remedied.[3] It is undisputed that Festival Servers do not work at the Forklift and are paid at a higher rate than bussers. That day, Plaintiff limited her "lifting and worked with the other Busser to fill in and stay on task in other ways."[4]

The next day, Plaintiff again clocked in as a Festival Server, though she was scheduled as a busser. Plaintiff vented to a coworker that she "had to clock in under Festival Worker and maybe they [management] wouldn't notice."[5] Early in her shift, Plaintiff experienced pain in her back and then cut her hand on a broken glass. Plaintiff left the restaurant and went to the employee smoking area to regain her composure.

---

[2] The parties dispute Plaintiff's actual job title. Defendant contends that Plaintiff was hired as a wait person, which would entail assignments as both a server and a busser. Plaintiff argues that she was only hired as server, not a busser. This dispute is irrelevant to the issues in Defendant's Motion. Moreover, the job descriptions for both the server and busser positions involve the same physical requirements. *See* Docket No. 11 Ex. G.

[3] Docket No. 10 Ex. 15 ¶ 17.

[4] *Id.* Ex. 1.

[5] *Id.*

Plaintiff was then approached by her supervisor and Plaintiff explained that she was physically incapable of working as a busser. At that point, Plaintiff was instructed to go home and her pay would be adjusted accordingly. Instead of going home, Plaintiff spent the rest of the day working in the Tram and Lifts Department. That evening, Plaintiff was contacted by the manager of the Forklift, who stated that Plaintiff was insubordinate and had attempted to defraud Defendant by clocking in as a Festival Server to receive more pay.

Plaintiff was placed on suspension pending termination and was given the opportunity to grieve her dismissal and no rehire status. Plaintiff did file a grievance, but was ultimately terminated after Defendant reviewed Plaintiff's past history.[6] Defendant's termination letter referenced the events of August 25 and 26, stating that they "have given us reason to believe you advertently clocked in at a higher rate of pay."[7] Clocking in at the wrong position to get more money is considered by Snowbird to be a falsification of time records or time cards and can result in termination.[8] Plaintiff denies this was her intent.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence

---

[6] Presumably, this past history included Plaintiff's previous termination, negative complaints from customers, and the fact that Plaintiff was given a final written warning. *Id.* Exs. 5, 6.

[7] *Id.* Ex. 18.

[8] *Id.* Ex. 4 ¶ 15; *see also* Docket No. 11 Ex. D, at 13, 26.

[9] Fed. R. Civ. P. 56(a).

3

presented.[10] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[11]

III. DISCUSSION

Plaintiff brings claims under the Americans with Disabilities Act ("ADA") for discrimination and retaliation. The Court will discuss each claim in turn.

A. DISCRMINATION

Discrimination under the ADA encompasses three types of discrimination: disparate treatment, failure to accommodate, and disparate impact.[12] Plaintiff brings claims for disparate treatment and failure to accommodate. "Where, as here, an ADA plaintiff seeks to proceed to trial exclusively on the basis of circumstantial evidence of discrimination, [the Tenth Circuit has] held that 'the analytical framework first articulated in' *McDonnell Douglas* . . . controls our analysis."[13] Under that framework, Plaintiff must first establish a prima facie case of discrimination.[14] If a plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.[15] Once the defendant articulates a legitimate, non-discriminatory reason for

---

[10] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[11] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[12] *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1188–89 (10th Cir. 2003).

[13] *Johnson v. Weld Cty. Colo.*, 594 F.3d 1202, 1217 (10th Cir. 2010) (quoting *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)).

[14] *Id.*

[15] *Id.*

its action, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the defendant's reasons are pretextual.[16]

   1.   *Disparate Treatment*

To establish a prima facie case of discrimination, a plaintiff must show that: (1) she is disabled; (2) she is qualified with or without a reasonable accommodation to perform the essential functions of her job; and (3) her employer discriminated against her because of her disability.[17]

Plaintiff cannot establish a prima facie case for two reasons. First, she is not disabled under the ADA. Second, she has not shown that she was terminated because of her disability.

A person is "disabled" under the ADA if she has "a physical or mental impairment that substantially limits one or more major life activities."[18] "To satisfy this definition, a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities."[19]

Plaintiff claims that her back injury limits her ability to lift.[20] The parties do not appear to dispute that Plaintiff has a back injury. Further, lifting is a major life activity.[21] Therefore,

---

[16] *Id.*

[17] *Id.*

[18] 42 U.S.C. § 12102(1)(A).

[19] *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011) (internal quotation marks omitted).

[20] In her deposition, Plaintiff pointed to other effects of her back injury, but did not discuss them in her response to Defendant's Motion. Instead, Plaintiff claims "that her evidence show[s] that her back condition substantially limits her ability to lift, especially repetitively." Docket No. 11, at 3. As a result, the Court has only considered whether her back injury substantially limits the major life activity of lifting. Even considering these other alleged limitations, they fail for substantially the same reasons.

5

the Court finds that Plaintiff has met the first two requirements. Thus, Plaintiff must show that her impairment substantially limits the major life activity of lifting.

An impairment substantially limits a major life activity "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."[22] Where an impairment is not substantially limiting on its face, the Tenth Circuit requires a plaintiff to "produce comparative evidence from which a reasonable inference can be drawn that such activity is substantially limited."[23] Failure to do so requires dismissal.

Plaintiff has failed to present such evidence here. The only evidence is that, at the relevant time, Plaintiff was prevented from engaging in sustained heavy lifting. It is unclear exactly what this restriction entails but, in emails sent during the relevant time, Plaintiff stated that she did not have the physical ability to sustain all day digging and construction.[24] There is nothing in the record to suggest that Plaintiff's impairment reduced her capabilities in this area below those of the average person. Turning to the job description of a busser, which Plaintiff stated she could not perform, it required the ability to lift twenty-five pounds. Presumably, this means that Plaintiff claims she cannot lift that amount.[25] Courts, including the Tenth Circuit,

---

[21] *See Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1240 (10th Cir. 2001); *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1172 (10th Cir. 1996); *see also* 42 U.S.C. § 12102(2)(A) (providing that lifting is a major life activity).

[22] 29 C.F.R. § 1630.2(j)(1)(ii).

[23] *Lusk*, 238 F.3d at 1241.

[24] Docket No. 11 Ex. F.

[25] Plaintiff's evidence on this point is unclear because she has testified that her current job requires her to lift up to forty pounds, which she can do occasionally. Docket No. 11 Ex. A, at 9:22–25.

have found that a twenty-five pound lifting restriction is not substantially limiting on its face.[26] Without some sort of comparison of Plaintiff's limitation to the general population, Plaintiff cannot make out a prima facie case. Therefore, this claim fails.

Next, Plaintiff has failed to demonstrate that she was terminated because of her alleged disability. "In order to demonstrate 'discrimination' a plaintiff generally must show that he has suffered an 'adverse employment action *because of* the disability.'"[27] Here, there is no evidence that Plaintiff was terminated because of her alleged disability. Instead, the evidence demonstrates that Plaintiff was terminated because she clocked in at the incorrect, and higher paid, position of Festival Server. Defendant viewed this as an attempt to obtain more money by falsifying her time card, something prohibited by Defendant's employment manual and strictly enforced. While Plaintiff disputes Defendant's characterization of her actions, she has provided no evidence that she was terminated because of her disability. Indeed, the evidence shows that Defendant accommodated Plaintiff's back injury for a significant period of time before it made the decision to terminate her.

Even assuming that Plaintiff could demonstrate a prima facie case, her claim still fails. Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's termination. As stated above, Defendant has presented evidence that it terminated Plaintiff because they believed she had committed time card fraud. Thus, the burden shifts to Plaintiff to demonstrate pretext. "To establish pretext, [Plaintiff] must present 'evidence of such weaknesses, implausibilities,

---

[26] *Velarde v. Associated Regional & Univ. Pathologists*, 61 F. App'x 627, 630 (10th Cir. 2003); *see also Lusk*, 238 F.3d at 1241 (collecting cases).

[27] *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011) (quoting *Mathews v. Denver Post*, 263 F.3d 1164, 1167 (10th Cir. 2001)) (emphasis added).

7

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'"[28]

Here, Plaintiff has provided no evidence of pretext. Plaintiff argues that she had no dishonest motive when she clocked in as a Festival Server. Plaintiff's explanations for her actions, however, are not relevant to this evaluation. "'In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear *to the person making the decision*,' we do not look to the plaintiff's subjective evaluation of the situation."[29] Plaintiff provides nothing but her own subjective beliefs to argue that Defendant's decision to terminate her was pretextual. Even if Plaintiff is correct that she did not intend to defraud Defendant, "an employer's exercise of erroneous or even illogical business judgment does not constitute pretext."[30] Without more, this claim fails.

Plaintiff also argues that pretext can be shown because Defendant chose to fire her instead of imposing some other form of progressive discipline. This argument, however, ignores the fact that Plaintiff had already been previously terminated by Defendant, that she was the subject of multiple customer complaints, and that she had previously received a final written warning. Defendant's termination letter, while not specifically calling out these other instances, referenced that it had reviewed Plaintiff's "past history."[31] Thus, the evidence shows that

---

[28] *Proctor v. UPS*, 502 F.3d 1200, 1209 (10th Cir. 2007) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006)).

[29] *C.R. England, Inc.*, 644 F.3d at 1044 (quoting *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007)).

[30] *Reynolds v. Sch. Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1535 (10th Cir. 1995).

[31] Docket No. 10 Ex. 18.

Defendant had engaged in progressive discipline, which ultimately resulted in Plaintiff's termination. As a result, Plaintiff's termination does not provide evidence of pretext.

### 2. *Failure to Accommodate*

"In order to establish a prima facie case of failure to accommodate in accordance with the ADA, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability."[32]

For the same reasons set forth above, the Court concludes that Plaintiff has not presented evidence that she has a disability under the ADA. Therefore, this claim fails.

### B. RETALIATION

To establish a prima facie case of retaliation under the ADA, Plaintiff must show that: (1) she engaged in a protected activity; (2) a reasonable employee would have found the challenged activity materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action.[33] Like Plaintiff's claims for discrimination, Plaintiff's claim for retaliation is subject to the *McDonnell Douglas* burden-shifting framework.[34]

The Court will assume for the sake of this Motion that Plaintiff can make out a prima facie case of retaliation. As above, Defendant has articulated legitimate, non-retaliatory reasons for Plaintiff's termination. Therefore, the burden shifts to Plaintiff to demonstrate pretext. She has failed to do so. Plaintiff's only argument in support of pretext is the close temporal

---

[32] *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 830 n.2 (10th Cir. 2011) (quoting *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 74, 747–48 (7th Cir. 2011)).

[33] *Jones v. UPS, Inc.*, 502 F.3d 1176, 1193 (10th Cir. 2007).

[34] *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999).

9

proximity to her alleged request for accommodation and her termination.  However, the Tenth Circuit has held that "temporal proximity alone is insufficient to raise a genuine issue of material fact concerning pretext."[35]  Because Plaintiff fails to point to any other evidence in support of pretext, summary judgment is appropriate on this claim.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 10) is GRANTED.  The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff, and close this case forthwith.

DATED this 17th day of May, 2017.

BY THE COURT:

Ted Stewart
United States District Judge

---

[35] *Proctor*, 502 F.3d at 1213.